UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE COLBERT,

      Plaintiff,

vs.                                                                                                  Case No.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,                                                       HON.

      Defendant.

_____

Troy W. Haney (P48614)
HANEY LAW OFFICE, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone:  616-235-2300
Facsimile:  616-459-0137
Email:  thaney@troyhaneylaw.com

_____

## COMPLAINT

      Plaintiff, Michelle Colbert, by her attorney, Troy W. Haney of Haney Law Office, P.C., and for her complaint against Defendant, Hartford Life and Accident Insurance Company, states as follows:

### Nature of Action and Jurisdiction

1.     This is a civil complaint brought by Plaintiff, Michelle Colbert ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), § 502, 29 U.S.C. 1132, regarding breaches of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling Defendant, Hartford Life and Accident Insurance Company ("Defendant"), to provide certain disability and premium waiver insurance benefits in

amounts and at the coverage levels promised and for an accounting, recovery of damages, costs, and attorney fees incurred as a consequence of Defendant's breaches of its obligations and duties under ERISA as detailed herein.

2. This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3. Venue properly lies in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. 1132(e)(2).

**Parties and General Allegations**

4. At all relevant times, the Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the "Group Long Term Disability Plan for Employees of THE AUTO CLUB GROUP" ("the LTD Plan") provided by The Auto Club Group to its eligible employees, including the Plaintiff, administered and funded by an insurance policy issued by Defendant to The Auto Club Group for group disability benefits as group policy no. GLT-674850.

5. At all relevant times, the Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the "Group Basic Term Life, Supplemental Dependent Life, Supplemental Term Life, Supplemental Accidental Death and Dismemberment Plan for Employees of THE AUTO CLUB GROUP" ("the Life Plan") provided by The Auto Club Group to its eligible employees, including the Plaintiff, administered and funded by an insurance policy issued by Defendant to The Auto Club Group for life insurance and accidental death and dismemberment benefits as group policy no. GL-674850.

6. At all relevant times, the LTD and Life Plans were employee welfare benefit plans within the meaning of ERISA § 3(1), 29 U.S.C. 1002(1), sponsored by The Auto Club Group and funded by the above-referenced insurance policies issued by Defendant. As such, Hartford

  Life and Accident Insurance Company is the proper party to defend this matter and the sole entity responsible for the payment and continuation of claimed benefits set forth below.

7. At all relevant times, Defendant was the fiduciary of the LTD and Life Plans within the meaning of ERISA § 3(21), 29 U.S.C. 1002(21), in that Defendant acted as a claims administrator and as a fiduciary for the LTD and Life Plans, and exercised authority and control over the payment of long term disability "LTD" and life waiver of premium "LWOP" benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Defendant, therefore, functioned as an administrator for claims procedure purposes.

## Facts

8. Plaintiff, Michelle Colbert, became employed full-time by The Auto Club Group in 2008 as a Casualty Claim Adjuster. Over the following years she also held the positions of Catastrophic Loss Property Specialist, Residential Property Adjuster, and then in 2016 she was promoted to Senior Large Loss Property Specialist.

9. The Plaintiff's diagnosed medical conditions are as follows:

    - Cervical Disc Degenerative Disease
    - Chronic Fatigue
    - Chronic Obstructive Pulmonary Disease ("COPD")
    - Cluster Headaches, intractable and episodic
    - Coronary Artery Disease
    - Coronary Artery Microvascular Disease/Angina
    - Essential Hypertension
    - Hyperlipidemia
    - Idiopathic Peripheral Neuropathy
    - Impaired Short Term Memory
    - Ischemic Stroke (in the basal ganglia)
    - Mild Cognitive Impairment
    - Severe Nocturnal Hypoxemia

10. As a result of the above-described medical conditions, the Plaintiff has complaints of chest pain, significant fatigue, light headedness, imbalance, weakness, dizziness, insomnia, shortness of breath with minimal exertion, and cluster headaches which are brought on by her daily nitroglycerin use and which require oxygen to abort. The Plaintiff also has difficulty with concentration and memory and cannot be active long enough to perform any type of work. She also experiences significant depression and anxiety due to her reduced quality of life. The Plaintiff also cannot perform her activities of daily living and requires help with her house and yard work.

11. The Plaintiff has been advised that she is at high risk for heart attack and stroke (family history on both sides of the family). Due to COVID-19, the Plaintiff's physicians have advised her to stay home due to her comorbidities and her escalated risk for severe symptoms, or even death, if she were to contract the virus.

12. As a result of the Plaintiff's various medical conditions and the overflow of symptomatology, the Plaintiff's last day of work was on January 25, 2018.

13. On July 24, 2018, an Attending Physician Statement was completed by Mary Jo Dempsey Robbins, MSW, which stated in part that the Plaintiff is, "unable to perform sustained work of any kind, especially work that requires concentration & memory & stamina".

14. On September 14, 2018, a Provider Activity Level Report was completed by one of the Plaintiff's attending physicians, Dr. Mark Jacoby, and which stated in part that, "Michelle is unable to perform any of the above activities [sedentary, light, medium, heavy, very heavy] on a consistent basis throughout an 8 hr. day/40 hr. week due to anginal pain upon minimal exertion, cluster headaches resulting from the use of nitroglycerin, severe fatigue/dizziness, lightheadedness, insomnia from medications, especially Bisoprolol".

15. In accordance with the LTD Plan, the Plaintiff had applied for LTD benefits, which was approved on September 19, 2019, with an effective date of July 30, 2018.

16. The definition of "Disability or Disabled" within the LTD Plan is as follows:

    Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:

    1) Your Occupation during the Elimination Period;

    2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

    3) after that, Any Occupation.

17. The definition of "Your Occupation" within the LTD Plan is as follows:

    **Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

18. The definition of "Any Occupation" within the LTD Plan is as follows:

    **Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:

    1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or

    2) the Maximum Monthly Benefit.

19. On September 25, 2018, the Defendant corresponded with The Auto Club Group advising that the Plaintiff may be eligible for Life Waiver of Premium ("LWOP") benefits, which if approved, would waive the Plaintiff's premium payments for her supplemental life insurance coverage.

20. The definition of "Disabled" within the Life Plan is as follows:

    Disabled means You are prevented by injury or sickness from doing any work for which You are, or could become, qualified by:

    1) education;
    2) training; or
    3) experience.

    In addition, You will be considered Disabled if You have been diagnosed with a life expectancy of 12 months or less.

5

21. Under the coverage of the Life Plan, the Plaintiff had $72,600 in basic life insurance coverage, and an additional $217,600 in supplemental life insurance coverage, however, only the $217,600 in supplemental coverage was eligible for potential waiver of premiums.

22. On October 4, 2018, Dr. Jacoby responded to a letter from the Defendant, and confirmed that the Plaintiff did not have the capacity to perform sedentary work on even a part-time basis (3 hours/day, 5 days/week).

23. On October 8, 2018, another of the Plaintiff's attending physicians, Dr. Herbert Miller, also responded to a letter from the Defendant and confirmed that the Plaintiff was unable to perform sedentary activity, "due to anginal pain upon minimal exertion, cluster headaches resulting from use of nitroglycerine, and severe fatigue, lightheadedness, dizziness, and insomnia from medications".

24. On November 7, 2018, the Defendant advised the Plaintiff that her LWOP claim had been denied because she did not meet the Life Plan's definition of "Disabled". The letter stated in part,

> We have completed the review of your claim for Waiver of Premium benefits and have determined that the documentation submitted in support of your claim does not establish that you meet the Policy's definition of Disabled. This letter does not apply to any other coverage you may have through The Hartford. * * *
>
> Based on the terms of the Policy Your Life Insurance coverage may be continued under the Waiver of Premium provision, if You are prevented by injury or sickness from doing any work for which You are or could become qualified by education, training or experience, and provide proof that you have been Disabled for 9 consecutive months.
>
> Documentation in your file reflects that on 1/26/2018, you stopped working as a Claims Specialist for The Auto Club Group with a diagnosis of Angina Pectoris, COPD, Cluster Headaches, dyspnea on exertion and depression. Since we have not found evidence that documents a loss of functionality, for your physical condition, sufficient to render you Disabled for 9 consecutive months, you are not eligible for Waiver of Premium.

25. The Defendant's decision to deny the LWOP claim was based in part on a paper-file review completed by Dr. Rafid Kakel on November 2, 2018. Notably, Dr. Kakel did not speak to

6

or examine the Plaintiff at any time. Dr. Kakel stated within his report that in his opinion, Plaintiff could continue working full-time within a specified set of restrictions and limitations.

26. Notably, although the November 7, 2018 denial letter confirmed that it had reviewed multiple medical records and reports, it made no mention of Dr. Jacoby's October 4, 2018 letter, nor Dr. Miller's October 8, 2018 letter, where both had confirmed that the Plaintiff did not have the capacity to perform a sedentary position.

27. On November 28, 2018, Plaintiff had an appointment with Dr. Jacoby, and within the notes from that visit, Dr. Jacoby stated in part,

> She is still quite limited due to her numerous issues, including cluster headaches, neurologic symptoms that are as of yet undiagnosed, and her exertional angina, as well as chronic fatigue. Based upon these several issues I continue to feel that she is fully disabled. I would not anticipate that she could work for no more than 2 hrs. on any given day, at a sedentary job, and it would not be possible to predict when these 2 hrs. would occur during the day.

28. On February 1, 2019, the Plaintiff's Neurologist, Dr. Jiangyong Min, drafted a "To Whom It May Concern Letter", which stated:

> Michelle Colbert has been under my care at Spectrum Health Neurology Muskegon Clinic since 08/30/2018 for several neurological disorders including impaired short-term memory and mild cognitive impairment, idiopathic peripheral neuropathy, and mild cervical disc degenerative disease. Her brain MRI (09/15/18) revealed evidences of microvascular changes which could contribute to her impaired memory/cognitive function. In addition, she has coronary artery microvascular disease/angina per Dr. Mark Jacoby (Cardiologist), and COPD and obstructive sleep apnea per Dr. Amanda Wheaton (Pulmonologist). Office visiting notes from Dr. Jacoby and Dr. Wheaton are reviewed in person carefully. **To my best knowledge, she will [have] difficulty to keep up her job, even eight hour per day of sedentary job. Currently medical management might be beneficial to slow down the progression of microvascular disease, but it is unable to reverse the progress of the disease.** (Emphasis added).

29. On February 8, 2019, without the assistance of counsel, the Plaintiff submitted a one-page appeal of the denial of her claim for LWOP benefits.

30. On April 2, 2019, the Defendant had three physicians conduct a "Co-Morbid Panel Peer Review" of Plaintiff's LWOP claim, including a Neurologist, Dr. David Burke, a

Cardiologist, Dr. Stanley Chou, and a Psychologist, Dr. Jess Ghannam. Each of the three physicians reviewed only a portion of the Plaintiff's medical conditions respective to their own specialty, and all three opined that the Plaintiff was capable of performing full-time work within a sedentary position. Notably, none of the three physicians spoke with or examined the Plaintiff.

31. On April 3, 2019, the Defendant provided the Plaintiff with a copy of the peer-review reports for an opportunity to review and respond to the reports.

32. On April 16, 2019, the Plaintiff submitted her response to the Co-Morbid Panel Peer Review, critiquing the reports from the reviewing physicians, as well as providing a very detailed explanation of how she is affected by each of her various medical conditions, as well as the side effects from the multiple medications she takes for those conditions. The Plaintiff also provided additional medical records, prescription records, educational materials on her diagnosed conditions, and statements from her friends and family explaining how the Plaintiff's ability to function has changed since becoming disabled, including the following excerpts:

> **Kelly Carrier – Friend / Former Co-Worker**
> I have known Michelle Colbert personally for 38 years… In the time that I have known her, Michelle has been one of the most active and hardest working women I know. She has a very strong work ethic which is one of the qualities I admire most about her. I have witnessed her face prior injury and illnesses with very little work disability… Over the past few years, I have observed her health deteriorate to a point where she can no longer work. Any physical or mental exertion results in the need to recuperate; sometimes for days… I have witnessed what a reasonable person would consider minor activity cause Michelle to have to take nitroglycerin and rest immediately. Her condition is complicated by horrific cluster headaches that come quickly and render her incapacitated. She simply cannot handle a set schedule as she never knows how she is going to feel on any given day. This makes even part-time sedentary work impossible for her.
>
> **Sharon Rindfusz – Friend / Former Co-Worker**
> Michelle has been one of my closest and dearest friends for almost 40 years. Michelle was the most hard working, strongest (emotionally and physically), fearless women I have the pleasure of knowing… Her job required 100% physical and mental strength and she mastered it perfectly. I have watched her go from Superwoman to a woman who struggles to do even the most mundane of duties.

8

> She becomes extremely exhausted after the smallest of tasks. I can never have her come to visit anymore, because she is on the verge of a stroke or heart-attack after climbing stairs.
>
> **Michael Barnhardt – Father**
> I am writing to advise of my daughter's illness that has been preventing her from working since 2018. My wife has been hospitalized since the end of January 2019, due to a massive stroke, and by no fault of her own, Michelle has been unable to spend as much time with the family as she would like… I, personally, have witnessed her exhaustion, chest pain, difficulty breathing, headaches and walking any type of distance. She is at very high risk for heart attack and stroke as it is hereditary on my side of the family tree, as well as her mothers.
>
> **Jessica Colbert – Daughter**
> I have always known my mother to be an energetic and vibrant person. For as long as I can remember she has always been a work-horse who took extreme pride in her career. As a child I watched her climb on roofs, install in-ground pools, and even build houses. It was always clear that her career gave her a sense of self worth and she strived to be the best at whatever she was doing… However, in the last two years she has had to face some of the most difficult challenges of her entire life… She has difficulty staying awake for more than a couple of hours at a time. Any physical exertion is nearly impossible and she has to ask family for help with even the smallest things… Her health and physical state is too unpredictable to maintain regular hours… As someone who knows her extremely well and has witnessed her symptoms first hand, I can emphatically say that she is not fit to work. The unpredictability of her symptoms would make even a sedentary job difficult and all of her doctor's agree.

33. In June, 2019, in response to the Plaintiff's additional information, Defendant had Dr. Burke, Dr. Chou, and Dr. Ghannam review the Plaintiff's supplemental information and provide addendums to their original reports – each of which confirmed their prior conclusions that the Plaintiff was not restricted from working in a sedentary position.

34. On July 8, 2019, the Defendant advised that it was maintaining its decision to deny the Plaintiff's LWOP claim. The decision letter stated in part as follows:

> We have completed our comprehensive appeal review and determined the decision to deny your claim for Life Waiver of Premium benefits was appropriate. * * *
>
> The co-reviewing neurology and cardiology specialists are of consensus that you retained the capacity for full-time sedentary exertion activities throughout the period of 01/31/2018 to the present time. * * *
>
> The weight of the evidence does not support that you were prevented from doing any work for which You are, or could become, qualified by education, training or experience from your date of Disability on 01/13/2018 to the present time. Accordingly, the Life Waiver of Premium claim denial decision is upheld and the claim remains closed.

9

35. In the Defendant's July 8, 2019 final denial letter of the Plaintiff's LWOP claim, the Defendant also advised the Plaintiff that the "*claim decision is now final as administrative remedies available under the Policy have been exhausted*" and that the Plaintiff "*may bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA")*".

36. Although the Plaintiff's claim for the LWOP benefit had been denied, she continued to receive LTD benefits and to qualify as disabled under the LTD Plan's definition of disability for her own occupation.

37. As a result of the Plaintiff's inability to return to work - in any capacity - the Plaintiff applied for and was awarded Social Security Disability ("SSD") benefits in August 2019, with an effective date of benefits starting on July 1, 2018.

38. On June 24, 2020, Dr. Jacoby completed an Attending Physician Statement, in which he reaffirmed that due to the Plaintiff's various medical conditions, she is unable to perform any level of activity on a consistent basis throughout an 8 hr. day/40 hr. week.

39. On July 30, 2020, the Defendant advised the Plaintiff that her LTD claim had been terminated. The letter stated in part,

> We have completed our review of your claim for benefits and have determined that you do not meet the policy definition of Disability beyond 07/29/2020. Because of this, Long Term Disability (LTD) benefits are not payable to you as of that date. * * *
>
> The definition of Disability in your contract changed as of 07/30/2020. As of this date, you must be disabled from Any Occupation to continue to receive LTD benefits. * * *
>
> We have concluded from the combination of all the medical information in your file that you are able to work full time, 40 hours per week; provided it is within the restrictions as outlined by Dr. Rea. * * *

40. The Defendant's decision to terminate the LTD claim was based in part on a paper-file review completed by Dr. Joseph Rhea, on July 15, 2020. Notably, Dr. Rhea did not speak to or examine the Plaintiff at any time. Dr. Rhea stated within his report that in his opinion, Plaintiff could work full-time within a specified set of restrictions and limitations.

41. The Defendant's decision to terminate the LTD claim was also based in part on an Employability Analysis Report completed by Laura Tracy, MS, CRC, on July 29, 2020. Notably, Ms. Tracy's analysis of the Plaintiff's functionality within potential positions of employment was based solely on the restrictions and limitations provided by Dr. Rhea, and did not consider any of the limitations or restrictions implemented by the Plaintiff's attending physicians.

42. On January 25, 2021, the undersigned appealed the Defendant's decision to terminate the Plaintiff's LTD benefits, providing additional medical records and documentation, as well as a Physician Statement of Disability from Dr. Jacoby, dated January 19, 2021, and stating in part:

> I am a Medical Doctor licensed by the State of Michigan and am Board Certified in Internal Medicine, Interventional Cardiology and Cardiovascular Diseases. * * *
>
> I am Michelle Colbert's Cardiologist providing medical care and treatment with regard to diagnosed coronary artery microvascular disease/angina.
>
> In addition to myself, I am aware that Ms. Colbert is providing medical care and treatment through other physicians and that her additional diagnosed medical conditions are as follows:
>
> - Chronic obstructive pulmonary disease
> - Chronic fatigue
> - Intractable episodic cluster headaches
> - Severe nocturnal hypoxemia
> - Impaired short term memory loss
> - Mild cognitive impairment
> - Small BG ischemic stroke identified on 2007 brain MRI
> - Idiopathic peripheral neuropathy
> - Cervical disc degenerative disease
> - Essential hypertension
> - Hyperlipidemia.

> As a result of the above-described medical conditions, Ms. Colbert has ongoing complaints of cluster headaches, which are brought on by her daily nitroglycerin use and requires oxygen to abort, chest pain, significant fatigue, light headedness, imbalance, weakness, dizziness, insomnia, shortness of breath with even minimal exertion. * * *
>
> As Ms. Colbert's Cardiologist, I have had the opportunity to examine her in a clinical setting multiple times and **it is my medical opinion that she is totally disabled from her own occupation as a Senior Large Loss Claim Specialist and from any other full-time occupation at this time.** (Emphasis added).

43. On February 22, 2021, the Defendant had three physicians conduct a "Tri-Morbid Independent Medical Review" of the Plaintiff's LTD claim, including Dr. Mahdy Flores, who specializes in a Family, Preventative, and Occupation Medicine; a Cardiologist, Dr. Andre Akhondi; and once again as the reviewing Psychologist, Dr. Ghannam. Each of the three physicians reviewed only a portion of the Plaintiff's medical conditions respective to their own specialty, and all three opined that the Plaintiff was capable of performing full-time work within a sedentary position, and with a provided set of restrictions and limitations. Notably, none of the three physicians spoke with or examined the Plaintiff.

44. On February 26, 2021, the undersigned submitted additional medical records as a supplement to the Plaintiff's appeal of the termination of her LTD benefits.

45. On March 16, 2021, in response to the supplement of additional medical records, the Defendant had Dr. Flores and Dr. Akhondi review the additional records and provide addendums to their original reports – both of which confirmed their prior conclusions that the Plaintiff could continue working in a full-time sedentary position within a provided set of restrictions and limitations.

46. On March 29, 2021, the Defendant advised that it was maintaining its decision to terminate the Plaintiff's LTD claim. The decision letter stated in part as follows:

> We have completed our comprehensive appeal review and determined your client does not satisfy the Any Occupation definition of Disability. * * *

> The question at hand is whether the medical information supports limitations precluding the claimant from Any Occupation as defined under the Policy. The results of the most recent tri-morbid IMR has again identified functionality consistent with sedentary work ability. Because of this, the occupations identified in the 07/29/2020 Employability Analysis remain valid and the claimant does not satisfy the Any Occupation definition of Disability. As such, the termination of the claim is upheld on appeal and the claim will remain closed.

47. At no time during the Defendant's review of Plaintiff's claims did the Defendant request an independent examination of the Plaintiff.

48. In the Defendant's March 29, 2021 final denial letter of the Plaintiff's LTD claim, the Defendant also advised the Plaintiff that the "*claim decision is now final as administrative remedies available under the Policy have been exhausted*" and that the Plaintiff has the "*right under Section 502(a) of ERISA to bring a civil action disputing this adverse benefit decision*".

## COUNT I
### Claim for Benefits Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) against Defendant

49. Plaintiff incorporates paragraphs 1 through 48 above as if fully restated herein.

50. ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan and/or to clarify her rights to future benefits under the terms of a plan.

51. The failure to pay full disability benefits as described above are in direct violation of the terms of the LTD Plan.

52. The failure to waive premium payments for Plaintiff's supplemental life insurance coverage is in direct violation of the terms of the Life Plan.

53. The LTD Plan has failed to pay disability benefits to Plaintiff despite the recommendations of her physicians and disabling medical conditions.

54. The Life Plan has failed to waive the premium payments for Plaintiff's supplemental life insurance coverage despite the recommendations of her physicians and disabling medical conditions rendering her unable to perform any work.

55. The failure and refusal of the LTD Plan to pay and/or continue the disability benefits owed Plaintiff under the LTD Plan is a breach of the terms and provisions of the Plan.

56. The failure and refusal of the Life Plan to waive premium payments for Plaintiff's supplemental life insurance coverage is a breach of the terms and provisions of the Life Plan.

57. In addition, the LTD and Life Plans have failed to properly and thoroughly investigate Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

58. The actions of the LTD and Life Plans have caused damage to Plaintiff in the form of the denial of long term disability benefits and the loss of supplemental life insurance coverage.

59. In addition, because the LTD Plan denied the payment of Plaintiff's long term disability benefits, Plaintiff may have become ineligible for other benefits provided through her employment such as pension and medical benefits.

**PRAYER FOR RELIEF**

Plaintiff requests that this Honorable Court grant the following relief:

A. A declaratory judgment pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the LTD and Life Plans in effect at the time benefits became payable and that Defendant has violated the Plans and its fiduciary duties by failing to pay these benefits and honor the waiver of life premium.

B. A full and accurate accounting by Defendant of all computations for Plaintiff's employee benefits, in sufficient detail so that Plaintiff may ascertain that his benefits are being paid in the proper amount.

C.  An Order compelling Defendant to pay Plaintiff forthwith the full amount of employee benefits due her and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D.  An Order compelling Defendant to reinstate Plaintiff's supplemental life insurance coverage under the Life Plan and waive premium payments for the coverage.

E.  An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

F.  Such other relief as may be just and appropriate.

Dated: June 17, 2021

*/s/ Troy W. Haney*
Troy W. Haney (P48614)
Haney Law Office, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503